[Crim. No. 17733. In Bank. Mar. 20, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW JENKINS et al., Defendants and Appellants.

**COUNSEL**

Gary K. Olsen, under appointment by the Supreme Court, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Arnold O. Overoye, Robert D. Marshall, Kevin M. Corrington and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CLARK, J.**—Defendants Andrew Jenkins and Carl Cole[1] appeal from judgments entered on jury verdicts convicting them of burglary (Pen. Code, § 459)[2] and of carrying a concealed firearm (Pen. Code, § 12025). The judgments are affirmed, but modified as to Cole.[3]

At 8:30 p.m., a deputy sheriff observed defendants buying gas for a blue 1966 Chevrolet. While on routine patrol two hours later, the officer observed a cotton gin building appeared secure, the south door padlocked. Patrolling the vicinity of the gin again at 1:45 a.m., he noticed the same car on the shoulder of the road, unoccupied, its lights out, hood up and passenger door open.

When the officer stopped, defendant Jenkins trotted across railroad tracks to the patrol car. Asked what he was doing in the area, Jenkins replied his car kept dying. However, in demonstrating the purported difficulty, Jenkins turned the ignition key only part way on, turning it off whenever the car began to start. When he complied with the officer's request to keep the key turned on, the car started without difficulty and remained running until turned off. Asked where his companion was,

---

[1]Carl Cole's true name is David Pride, but for convenience he will be referred to as Cole, the name under which he was tried.

[2]Holding the evidence insufficient to support the verdicts finding defendants guilty of first degree burglary, the trial court reduced their offenses to second degree. (See Pen. Code, § 1181, subd. 6.)

[3]The Attorney General is commended for directing our attention to the fact Cole's abstract of judgment erroneously recites he was charged and found to have been armed with a concealed deadly weapon at the time of his arrest within the meaning of sections 969c and 3024 of the Penal Code.

Jenkins replied Cole had gone to a nearby labor camp to seek help. However, the officer had not seen anyone walking along the road Cole would have travelled.

Asked for his permission to look in the trunk, Jenkins replied, "Yes, go ahead, Officer. Look through the whole car if you like." In the trunk the officer found a wrecking bar, crow bar, tin snips, lineman's pliers, and bolt cutters. (At trial the officer testified, over objection, that such tools are commonly used to commit burglaries.) The officer next radioed another patrol unit to determine whether the cotton gin was still secure. Becoming nervous upon overhearing the radio transmission, Jenkins said he wanted to move the car to a lighted area to work on it. The officer said he would follow in case the car died again. After driving a short distance, Jenkins stopped within 250 yards of the cotton gin to allow Cole into the car.

When they arrived at a service station, the officer noticed fresh grease and oil smeared on Cole's hands, trousers and shirt. He also observed a small bulge in Cole's back pocket and asked him what it was. Replying he did not know, Cole pulled out a hexagonal nut with oily residue on only one side, indicating it had been recently removed. Advised shortly thereafter that the gin building had been broken into, the officer arrested defendants. A search of their car revealed a loaded revolver under the front passenger seat.

The hasp on the south door of the gin building had been cut or pinched away from the padlock by an instrument similar to the bolt cutter found in the trunk of defendant's car. Brass or copper particles found on the hasp were similar to those found on the bolt cutter, suggesting it cut the hasp after cutting something made of brass or copper.

An air compressor had been moved from its mounting in the gin building to the yard. The grease and oil residue normally found on such equipment had been rubbed off on one side. The residue remaining on the opposite side appeared to match that found on Cole's shirt. On the floor of the gin building, the officer found four bolts and three hexagonal nuts that had fastened the compressor to its mounting. The officer's visual comparison of one nut with the nut Cole had in his pocket revealed they had the same threads, thickness and exterior circumference.

A set of size 14 or 14½ tennis shoe prints was found near the gin building and in the area where Cole entered defendants' car. When taken into custody Cole was shoeless, but asked for a pair of street shoes, size 14, from the back of the car.

Defendants testified they neither committed the burglary nor knew the revolver was in the car. Jenkins denied giving the officer permission to search the trunk.

■ Defendants now contend the tools found in the trunk should have been suppressed because the search was nonconsensual—a warrantless, nonconsensual search being unreasonable under the circumstances. Defendants further contend the revolver should have been suppressed as the "fruit of the poisonous tree." However, defendants' failure to preserve these issues by moving to suppress the evidence "at some stage of the proceedings prior to conviction" forecloses consideration on appeal. (Pen. Code, § 1538.5, subd. (m); *People* v. *Gallegos* (1971) 4 Cal.3d 242, 249 [93 Cal.Rptr. 229, 481 P.2d 237].)[4]

■ Alternatively, defendants contend failure to raise the search and seizure issues below constituted ineffective assistance of counsel.

■ Defendants bear the burden of establishing counsel's ineffectiveness. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 613 [114 Cal.Rptr. 250, 522 P.2d 1058]; *In re Downs* (1970) 3 Cal.3d 694, 698 [91 Cal.Rptr. 612, 478 P.2d 44].) "The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter." (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820]; see *People* v. *Strickland* (1974) 11 Cal.3d 946, 956 [114 Cal.Rptr. 632, 523 P.2d 672].)

The record must establish that counsel was ignorant of the facts or the law and that such ignorance resulted in withdrawal of a crucial defense, reducing the trial to a "farce and a sham." (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 612; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 466 [34 Cal.Rptr.

[4]In *People* v. *Triggs* (1973) 8 Cal.3d 884, 887-888, fn. 2 [106 Cal.Rptr. 408, 506 P.2d 232], this court held that a motion to strike testimony at the preliminary hearing as the product of an unreasonable search preserved the issue for appeal from the judgment of conviction even though no pretrial suppression motion had been made pursuant to section 1538.5, subdivision (i), of the Penal Code. The parties here having failed to provide this court with a copy of the preliminary hearing transcript, we have secured one and determined that defendants did not preserve the search and seizure issues by an appropriate objection or motion at that hearing.

863, 386 P.2d 487].) "Cases involving a failure to make these careful factual and legal inquiries and investigations necessary to a constitutionally adequate defense are to be distinguished, of course, from cases wherein counsel, *having made such inquiries and investigations,* makes tactical or strategic decisions—whether wise or unwise when viewed with the benefit of hindsight—which cause him not to utilize the fruits of his labors." (*In re Saunders* (1970) 2 Cal.3d 1033, 1042, fn. 7 [88 Cal.Rptr. 633, 472 P.2d 921]; italics in original.)

Defendants' reliance on *People* v. *Ibarra, supra,* 60 Cal.2d 460 is misplaced. In *Ibarra,* unlike this case, "the record leaves no room for speculation." (*Id.* at p. 466.) The record on appeal clearly revealed Ibarra's counsel failed to object to the admissibility of evidence because of his "unawareness of a rule of law basic to the case; a rule that reasonable preparation would have revealed," namely, that a charge of possessing contraband can be defended against on the inconsistent grounds that the defendant did not possess it and that it was illegally seized from his possession. (*Id.* at pp. 463-466.) "[T]he undisputed record suggest[ed] that the officers had no reasonable cause to arrest and search defendant." (*Id.* at p. 463.) Nevertheless, when defense counsel was asked whether he wished to object to the admission of the contraband, he replied: " 'Well, your honor, in view of the testimony from the defendant that the [contraband] was not in his possession and was not taken from him, under such circumstances I could not make a motion to object to its introduction. So far as I know I would have no grounds since defendant has denied this was in his possession." (*Id.* at pp. 463-464.)

By contrast, there is no indication in the record before us that counsel was unaware of the exclusionary rule, the procedure for invoking it, or the grounds for its invocation. (See *People* v. *Najera* (1972) 8 Cal.3d 504, 517 [105 Cal.Rptr. 345, 503 P.2d 1353] (claim that counsel was ineffective because of his failure to object to identification testimony rejected where "nothing in the record indicates that counsel was unaware of the highly publicized *Wade-Gilbert* rules").)

The tactical considerations which may have led counsel to refrain from a suppression motion are not readily apparent here. Although a suppression motion would have been fruitless if the conflict in testimony on the issue of consent had been resolved against defendants, the same may be said of most such motions. However, in the absence of affirmatively showing that counsel acquiesced through ignorance of the

facts or the law, defendants are not entitled to relief. "The failure of counsel to object at the trial does not ordinarily indicate either incompetence of counsel or unfairness to the client. The system of objections is a useful tool in the hands of a trained professional for the exclusion of matter which should not be received into evidence. But the indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. The choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. [Citations] The decisions which counsel must make in the courtroom will necessarily depend in part upon what he then knows about the case, including what his own client has told him. There may be considerations not shown by the record, which could never be communicated to the reviewing court as a basis for its decision. Thus, the appellate court's inability to understand why counsel did as he did cannot be a basis for inferring that he was wrong." (*People* v. *Garrison* (1966) 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731] (citations omitted); quoted with approval in *People* v. *Hoffman* (1970) 7 Cal.App.3d 39, 45 [86 Cal.Rptr. 435]; *People* v. *Perry* (1969) 271 Cal.App.2d 84, 114-115 [76 Cal.Rptr. 725].)

■ Defendants next contend the trial court erred by admitting over their objection the officer's expert testimony that the tools found in the trunk were the type commonly used to commit burglaries. " '[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193], quoting *People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].) Admission of the expert testimony was proper here. (See *People* v. *Hunt* (1971) 4 Cal.3d 231, 237 [93 Cal.Rptr. 197, 481 P.2d 205] (expert testimony based on such matters as quantity, packaging, and normal use by an individual admissible on issue whether narcotics were held for purpose of sale); *People* v. *Newman* (1944) 24 Cal.2d 168, 174 [148 P.2d 4, 152 A.L.R. 365] (expert testimony admissible as to meaning of signs, symbols, letters and numbers appearing in bookmaker's betting markers and other memoranda); *People* v. *Nickles* (1970) 9 Cal.App.3d 986, 993 [88 Cal.Rptr. 763] (expert testimony admissible on issue whether pipe was the type used for smoking marijuana).)

Finally, contrary to defendants' contention, the evidence is sufficient to support their burglary convictions. That certain conceivable scientific tests were not conducted by the People is without legal significance.[5]

■ The judgment is modified as to Cole. His abstract of judgment recites he was charged and found to have been armed with a concealed deadly weapon at the time of his arrest within the meaning of sections 969c and 3024 of the Penal Code. "Before a defendant can properly be sentenced to suffer the increased penalties flowing from [a finding that he was armed with a concealed deadly weapon at the time of his arrest within the meaning of section 3024] the fact . . . that the defendant was thus armed must be charged in the accusatory pleading, and if the defendant pleads not guilty thereto the charge must be proved and the truth of the allegation determined by the jury, or by the court if a jury is waived." (*People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892]; see Pen. Code, § 969c.) The section 3024 issue was not separately charged nor submitted to the jury as to Cole. Therefore, Cole's abstract of judgment is modified by striking the statement he was charged and found to have been armed with a concealed deadly weapon at the time of his arrest within the meaning of sections 969c and 3024 of the Penal Code.

The judgments as modified are affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

---

[5] Defendants complain, e.g., that the grease on the air compressor and Cole's clothing was not analyzed for the purpose of comparison.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.