[No. AO20981. First Dist., Div. Five. Mar. 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME CORNELIUS PANGELINA, Defendant and Appellant.

**COUNSEL**

Richard R. Murphy for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HANING, J.**—Defendant Jerome Cornelius Pangelina appeals from a conviction of murder in the second degree (Pen. Code, § 187) and use of a deadly weapon in the commission thereof (Pen. Code, § 12022, subd. (b)) on the ground he was denied competent counsel. We conclude that he received competent legal assistance and uphold the conviction.

The distressing facts reveal that on the evening of the murder, shortly after midnight, Lilly Day left the home of her sister, Opal McDaniel, to walk to a nearby convenience store. Day's niece, watching her aunt from the window, saw a car drive past Day, make a U-turn and stop next to her. The passenger, subsequently identified as defendant, got out of the car and began wrestling with Day. The driver exited the car and began to help defendant force Day into the rear seat. The niece alerted her mother and a friend, Kenneth Morrison, and they all ran outside to Day's aid. The two men jumped back in the car and sped away. The others returned to the house; Day remained on the porch. A few moments later the same car returned to the front of the house. Its occupants and Day exchanged obscenities. Defendant was outside the car and the driver remained behind the wheel. McDaniel went out on the porch and threw a glass mug at the car. The car again sped away. It returned in a few minutes and one of the occupants threw a beer bottle at the house. McDaniel looked out the door, saw defendant standing at the front gate in a pose that made her think he had a gun, and hid inside the house. After a few seconds elapsed and no gun had been fired, McDaniel looked out the door and saw defendant run off the porch and get in the car. The car drove away quickly. McDaniel then noticed her sister had blood dripping from underneath her jacket. Day subsequently died and death was attributed to a single stabbing to the abdomen which penetrated the liver, lung and heart. The defense was misidentification.

The primary issue raised is competency of counsel. ■ Defendant contends his right to "adequate" counsel was not protected because, inter alia, he was assigned a deputy public defender who "did not believe the defendant, did not believe in him, did not believe in his cause . . . ."[1] This argument is not sufficient to establish incompetency of counsel and thus a violation of defendant's rights under the Sixth Amendment to the United States Constitution nor under article I, section 15 of the California Constitution.

---

[1] The same deputy handled all stages of defendant's case from preliminary hearing through sentencing.

 The duty of defense counsel is to safeguard the rights of the client and competently and zealously present the defense. (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144].) Every person accused of a crime is entitled to constitutionally adequate legal assistance consisting of the services of a reasonably competent attorney acting as a conscientious advocate. The essence of competency is diligent and active participation in the full and effective preparation of the client's case and careful investigation of all defenses of law or fact that may be available. (*People* v. *Pope, supra,* at pp. 424-425, and citations therein.) Defense counsel's personal opinion concerning the guilt of the accused is irrelevant once the lawyer has accepted employment in a criminal case. (See *People* v. *Huffman* (1977) 71 Cal.App.3d 63, 74, fn. 4 [139 Cal.Rptr. 264]; Bus. & Prof. Code, § 6068, subd. (c).) The determination of guilt is for the jury. The lawyer's role is that of an advocate, and most observers agree that this role is best discharged by an objective lawyer unfettered by any emotional attachment to the client or preconceived notions of guilt or innocence.

We now examine defendant's claims of specific examples of defense counsel's incompetence.

(1) The public defender waived an opening statement.

 Defense counsel is not obliged to make an opening statement. Whether he does so or not rests upon his discretion. "The sole purpose of an opening statement is to outline facts upon which an acquittal will be sought. [Citations.] It is a matter of long-recognized trial tactics for a defense lawyer to withhold informing the prosecution of the facts upon which his defense is based by waiving an opening statement." (*People* v. *Hayes* (1971) 19 Cal.App.3d 459, 472 [96 Cal.Rptr. 879].) The defense at trial was misidentification, and the facts upon which acquittal was sought were not complicated. It is a reasonable trial tactic to delay announcing the facts supporting that defense until defense counsel can bolster them with witnesses, and achieve an element of surprise.

 (2) The public defender failed to cross-examine the prosecution witnesses adequately, particularly Kenneth Morrison, Day's sister's boyfriend, and Christine Curran, codefendant Spenger's[2] girlfriend.

Like an opening statement, "[t]he matter of impeachment is one for trial counsel's discretion." (*People* v. *Amadio* (1971) 22 Cal.App.3d 7, 15 [98

---

[2]The codefendant was convicted in a separate trial.

Cal.Rptr. 909].) Defendant claims Morrison was unable to identify him at the preliminary hearing but was able to do so at trial. Defendant misreads the preliminary hearing. Morrison did identify defendant as the person harassing Day, but was unable to see what happened between Day and defendant after defendant exited the car the second time. Consequently, there was not as much valuable material with which to impeach Morrison as defendant implies. In fact, the public defender did seek to impeach Morrison on his seemingly contradictory statements concerning Morrison's activities within the house, and his photo identifications. The public defender could reasonably have determined that further attempts at impeachment with weak material would have been perceived by the jury as harassment of the witness and counterproductive.

Defendant claims his attorney "failed to cross-examine [Miss Curran] at all, leaving her terrifying testimony at face value." This is an impressive statement on its face for defendant to make, but our review of the record fails to reveal any "terrifying testimony" presented to the jury. What it does reveal is a successful effort by defense counsel to exclude some very damaging testimony.

Curran made statements at the preliminary hearing and outside the presence of the jury that were highly damaging to defendant; they concerned a sexual assault made upon her by defendant, and racial epithets he uttered in her presence.[3] The trial judge refused to allow the prosecutor to question Curran about those statements on the grounds they were too prejudicial. Consequently, her testimony before the jury was merely a chronology of events prior to the murder, sanitized of evidence damaging to the defense.

Defendant does not advise us how Curran should have been cross-examined. Her cross-examination was admittedly brief, but for good reason. The harmful testimony had been excluded, and to attack her rather bland testimony too vigorously may only have opened the door for the admission of the excluded material. Most good trial lawyers understand these tactics and use them as advantageously as circumstances permit. (See *People* v. *Eckstrom* (1974) 43 Cal.App.3d 996, 1002-1003 [118 Cal.Rptr. 391].)[4]

---

[3]The victim was black. Defendant was not.

[4]A word about cross-examination is due. Cross-examination should have a purpose. Meaningless, argumentative debate which neither affects credibility nor brings out facts favorable to the cross-examiner's case is rarely productive, and usually harmful. Good cross-examination is, like the well known description of pornography, incapable of precise definition, but recognizable when observed. It takes many forms depending upon the lawyer, the witness and the type of case being tried. However, one unfaltering rule exists, and all good lawyers know it: with all witnesses there comes a time, sooner or later, to shut up; or, to phrase it another way, to quit when one is ahead. All experienced trial lawyers can painfully recall occasions when they asked one too many questions, or attempted to spar with a witness

■ (3) The public defender used "nonmeritorious witnesses."

Defendant makes no reference to the record to indicate why they were such. Generally, defendant's witnesses testified to the aggressive nature of the victim or to defendant's whereabouts the night of the stabbing. These witnesses were thus used to support defendant's version of the case and to show that others could have been provoked to assault the victim. Defendant also states that good character evidence was available to him which his attorney did not use, but he does not identify this evidence or cite to the record to show the refusal to use it. However, good reasons exist for not introducing character evidence. Evidence of the defendant's bad character is not admissible in a criminal case unless he first introduces evidence of his good character. (Evid. Code, § 1102.) For this reason, most experienced criminal lawyers do not present character evidence unless their client's reputation is unassailable. The defendant in the instant case was not such a client. His past record of assaultive conduct and racial prejudice were live ammunition for the prosecution to fire if the target were presented. The decision to avoid making defendant's character an issue in this case appears prudent.

■ (4) The public defender did not call defendant as a witness.

Defendant does not allege the substance of the testimony which he would have given in his own defense. ■ "To sustain a claim of inadequate representation by reason of failure to call a witness, there must be a showing from which it can be determined whether the testimony of the alleged additional defense witness was material, necessary, or admissible, or that defense counsel did not exercise proper judgment in failing to call him. [Citation.]" (*People* v. *Hill* (1969) 70 Cal.2d 678, 690-691 [76 Cal.Rptr. 225, 452 P.2d 329].) When the witness is the defendant himself, the rule is similar. While the defendant has the right to testify in his own behalf, this right may be waived by his attorney on his behalf. (*People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Whittington* (1977) 74 Cal.App.3d 806 [141 Cal.Rptr. 742].) ■ ". . . Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. [Citations.] The decisions which counsel must make in the courtroom will necessarily depend in part upon what he

---

who was better left alone. These are the decisions that trial lawyers must make in the trenches during the battle, and frequently without benefit of time for relaxed analysis. Such decisions are based upon many factors, not the least of which is the trial lawyer's assessment of the particular witness' image—the attitude, the demeanor and credibility projected to the jury. These are factors which are not readily ascertainable from a cold, printed record, and for that reason are best left to trial counsel's discretion. (*People* v. *Amadio, supra,* 22 Cal.App.3d at p. 15.) Often, the best tactic is to refrain from any cross-examination. In the instant case, brevity was the word of the day.

then knows about the case, including what his own client has told him. There may be considerations not shown by the record, which could never be communicated to the reviewing court as a basis for its decision. . . ." (*People* v. *Jenkins* (1975) 13 Cal.3d 749, 755 [119 Cal.Rptr. 705, 532 P.2d 857], citing *People* v. *Garrison* (1966) 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731].) ██ Given the strong evidence against defendant, and not being privy to his conversations with his attorney, we cannot, on the basis of this record, view defense counsel's decision not to call defendant as a witness as ineffective representation. However, we can readily think of several good reasons why he did not. One of the more obvious is defendant's statement in the presentence report that he could recall nothing about the event.

██ (5) The public defender mishandled the closing arguments.

Defendant contends his trial counsel allowed the prosecution to "run rampant, using a John Wayne theme," but, contrary to rule 15 of the California Rules of Court, he makes no reference to the record of the closing argument where the prosecutor misstated facts, referred to matters outside the record, offered personal opinion, or the like. He contends the public defender improperly used newspaper articles, in his closing argument, describing other cases in which witnesses had been wrong in their identifications of the accused. He does not state why the use of such articles in this case was improper. This form of argument has been approved (*People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69]; *People* v. *Woodson* (1964) 231 Cal.App.2d 10 [41 Cal.Rptr. 487]), and as the entire thrust of the defense was misidentification by prosecution witnesses, the use of the articles was a persuasive means of casting doubt on the accuracy of their testimony.

We have discussed those instances cited by defendant as examples of his lawyer's failure to act. We also note examples of affirmative action undertaken by the public defender on defendant's behalf: (1) a pretrial motion to sever the trial from the codefendant. Initially unsuccessful, the severance was later granted. This was important because of damaging admissions by the codefendant; (2) a challenge to the jury panel; (3) a *Wheeler* motion during voir dire;[5] (4) a motion for mistrial; (5) appropriate objections to prosecution evidence; (6) a successful effort to exclude damaging evidence against defendant; (7) successful arguments concerning jury instructions; (8) an appropriate closing argument; and (9) effective representation at sentencing. Our general impression is that the lawyer whom defendant vigorously attacks for incompetence has salvaged a second degree conviction

---

[5]*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

from what otherwise might have been a first degree case. There is adequate evidence of wilfulness, deliberation, premeditation, malice aforethought and an intent to kill the victim because of her race—all factors which could sustain a conviction of first degree murder.

A final word about incompetency of counsel is warranted. It has become routine to assign incompetency of trial counsel as grounds for reversal in nearly every criminal appeal. While negligent lawyering does occasionally exist, as does negligence in any profession, it does not occur in every case, although if one were to review all the appellate briefs filed, one might believe incompetence is rampant among criminal lawyers. If representation falls short of the standards enunciated in *Pope* and *Fosselman,* a conviction should properly be reversed. However, the attack on trial counsel made here transcends a charge of *Pope* error. Defendant claims, "[w]ith [the public defender's] defense, the case of People vs. Pangelina scarcely needed a prosecutor, and the prosecutor assigned had a 'field day,' with no opposition of a defense counsel, who obviously believed in the guilt of his client and showed it at every turn in the lack of performance of his duties, and in the abuse of discretion of his office." This charge is totally unfounded in the record before us. What we do see is an appropriate discharge of professional responsibilities by a public defender faced with a difficult and unsympathetic factual situation. The defense of a murder charge is rarely easy. When two healthy men attack and kill an unarmed woman under circumstances indicating racial motivation, the task of defense counsel becomes even more difficult, and second-guessing of trial tactics should be discouraged in the absence of clear reasons establishing their impropriety under *Pope-Fosselman* standards. (*People* v. *Pope, supra,* 23 Cal.3d 412; *People* v. *Whittington, supra,* 74 Cal.App.3d at p. 819.)

When charging that specific tactical decisions of trial counsel constitute incompetence, it is incumbent upon the defendant either (1) to cite existing legal authorities which support the charge, or (2) if existing law is contrary to defendant's position, to advance plausible arguments why it should be changed. Defendant's five-page brief does neither,[6] and we do not see in the examples raised by defendant any demonstration of defense incompetence.

Defendant also claims error based on the failure of the trial court to appoint a different lawyer for him, or at least to grant him a hearing to determine whether his lawyer should be replaced. (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].) The record reveals

---

[6]The singular theme of defendant's brief and the frequent failure to cite to the record has prompted us to examine the record independently for reversible error. We find none.

that defendant made such a request to the court and that the matter was set for hearing. However, no disposition is shown. Ordinarily this would require, at least, a remand for purposes of determining the validity of defendant's claim for new counsel. (See *People* v. *Bustamante* (1981) 30 Cal.3d 88, 103 [177 Cal.Rptr. 576, 634 P.2d 927]; *People* v. *Minor* (1980) 104 Cal.App.3d 194 [163 Cal.Rptr. 501]; *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 405 [132 Cal.Rptr. 30].) However, at oral argument defense counsel advised us that the sole reason defendant sought new counsel was for those reasons advanced in his brief and already discussed herein.[7]

The judgment is affirmed.

Low, P. J., and King, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1984.

---

[7]He claims his lawyer did not believe him nor believe in his cause.