Filed 3/14/13  P. v. Reyes CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND REYES, III,<br><br>    Defendant and Appellant. | B232396<br><br>(Los Angeles County<br>Super. Ct. No. VA104665) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribo, Judge.  Modified, and as modified, affirmed.

Carlo Andreani for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found defendant and appellant Raymond Reyes, III guilty of one count of heroin possession. After the trial court found true prior convictions and denied his *Romero*[1] motion, the court sentenced him to 25 years to life under the Three Strikes law. Reyes now contends that the court abused its discretion by denying his *Romero* motion, that his sentence violates federal and state constitutional prohibitions against cruel and unusual punishment,[2] and that his constitutional right to present a defense was denied when the court refused to compel the attendance of in-custody witnesses. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual background.

While conducting an unrelated investigation on February 26, 2008, a detective came into contact with Reyes, whose physical symptoms indicated he was under the influence of heroin or opiates. After finding a key to a motel room in Reyes's pocket, detectives searched the room and found, in a man's jacket, two hypodermic needles that appeared to be used, because they contained a brown liquid resembling tar heroin and because blood residue was on the needles. Inside a hat was a plastic baggie containing what tests confirmed to be 0.31 grams of heroin.

While in the booking area of the police station, Reyes asked Detective Gary Sloan, a Los Angeles County Sheriff's Department gang investigator, why he wasn't being given a ticket and released. The detective told him a "20" had been found in his motel room, and Reyes said, " 'Oh, yeah.' "

---

[1]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (hereafter *Romero*).

[2]    The United States Constitution prohibits cruel and unusual punishment, and the California Constitution prohibits cruel or unusual punishment.

## II.    Procedural background.

On November 17, 2010, a jury found Reyes guilty of count 1, possession of heroin (Health & Saf. Code, § 11350, subd. (a)).[3] After a court trial on alleged priors, the court found that Reyes had suffered two prior first degree burglary convictions and denied his *Romero* motion to strike a prior. He was therefore sentenced to 25 years to life under the Three Strikes law.[4]

## DISCUSSION

## I.    The *Romero* motion.

Reyes contends that the trial court improperly considered an uncharged burglary and the testimony of a custodial witness in denying his *Romero* motion. We disagree.

A. *Reyes's* <u>Romero</u> *motion and the hearing on the motion.*

### 1.  The *Romero* motion.

Before trial, Reyes filed a *Romero* motion. It detailed Reyes's criminal history: convictions for drug-related crimes (none for sale) in 1983, 1987, and 1997; misdemeanor forgery in 1988; misdemeanor burglary in 1988; and felony burglary convictions in 1989 and in 1992. The 1992 felony burglary was his last felony conviction. In 2000, he possessed a controlled substance in prison, and the matter was handled administratively. In 2007, he was charged with possessing a controlled substance (Health & Saf. Code, § 11350, subd. (a)), and it was treated as a parole violation.

The motion also detailed Reyes's background. His drug and alcohol abuse began when he was 13. After graduating from high school in 1978, he enlisted in the army, serving four years of active duty and three years in an Advanced Development Program acting as a substitute for service members on leave. He was promoted to E-5 Sergeant and supervised over nine men. During this time he also worked for Rockwell, Int., as a

---

[3]    A first trial ended in a mistrial after the jury could not reach a verdict.

[4]    The abstract of judgment fails to note that Reyes was sentenced under the Three Strikes law, and it therefore must be corrected.

flightline mechanic.  In 1981 he was Soldier of the Month.  Reyes was honorably discharged in 1987.

While in the army, Reyes began abusing heroin, and he committed the 1988 and 1992 burglaries to support his addiction.  In prison, he joined Narcotics Anonymous, which helped, although he had some relapses.  Also while in prison, he obtained his GED in 2004.  After being released from prison, he became a certified forklift operator in 2005, while also working for landscaping companies.  He paid income taxes.  He attended a drug-counseling program for four years, mentored young people, and volunteered at Sober International, where he was an example to the youth in the program about the dangers of drugs and gangs.

Reyes contributes money to his family, which includes three adult children and his estranged wife.

### 2. The hearing on the *Romero* motion.

At the sentencing hearing, the trial court initially noted that Reyes's last strike conviction was in 1992, although he'd possessed narcotics in prison.  He had no documented history of violence.

In support of the motion, Daniel Garcia testified that Reyes volunteered at a counseling center for at-risk youth and was a role model to them.  Patricia Ann Castorena similarly testified that Reyes is a good person, whom she does not know to be violent.

To support the opposition to the *Romero* motion, Detective Sloan and Rene Enriquez testified.  In 2007-2008, Detective Sloan was part of a federal task force targeting the Varrio Hawaiian Gardens gang.  Based on his investigations, which included wire taps of telephone calls from the middle of 2007 to February 2008, it was his opinion that Reyes was directly related to the gang and a direct affiliate of the Mexican Mafia prison gang.

Detective Sloan investigated Reyes for a 2007 residential burglary, which did not result in a criminal filing due to mishandling by detectives.  The 92-year-old victim saw Reyes taking items out of the victim's house.  Reyes drove away from the burglary in the

4

same car that police were surveilling and that he was driving at the time of his arrest in this case.

Rene Enriquez, a member of the Mexican Mafia for 17 years until quitting in 2002, was serving multiple life sentences for murder. Enriquez first met Reyes in prison in 2000 or 2001. Reyes was then a member of Varrio Hawaiian Gardens gang and his brother, Gabriel Reyes, was trying to join the Mexican Mafia. Because Reyes was going to be paroled, Enriquez and his copartner, Darryl Baca, recruited him to expand their business in Hawaiian Gardens. Another reason Enriquez and Baca selected Reyes was his army record, he was personable, and they could kill his brother if Reyes stepped out of line. Enriquez and Baca made Reyes their crew leader, the person who represents on the streets the imprisoned Mexican Mafia member. They gave Reyes instructions, including to murder a gang member who had fallen into disfavor with the Mexican Mafia.

The prosecutor played audio clips of phone calls made in 2007 and 2008 between Reyes and various people, including Varrio Hawaiian Gardens gang members, that Enriquez interpreted as showing that Reyes was actively working for the Mexican Mafia. Enriquez offered the opinion that Reyes, as of 2008, was an active participant in the Mexican Mafia.

After hearing this testimony, the trial court commented that it had, prior to the People's evidence, been inclined to strike a strike, because Reyes had no documented incidents of violence, convictions or arrests, and Reyes had been essentially crime free since 1992, except for the narcotics possession. "But we are now faced with the evidence that has transpired over the last four or five years which creates a situation where the People would be arguing . . . this is not a person that in fact has not remained crime free." The court also noted that in one of the audio clips, Reyes implicated himself in the 2007 uncharged first degree residential burglary.

The trial court denied the motion, stating: "Well, the court is not going to strike the strikes because the court believes that the clear and convincing evidence is that in 2007 he committed a residential burglary. [¶] Now, a residential burglary is a classic

5

Three-Strike law, invasion of someone's home. So even without the Mexican Mafia information, I think that precludes the court from really finding—following *Williams*, that he falls outside the spirit of the Three-Strikes law. [¶] Because his own admissions clearly corroborate that he was the burglar in question and that it occurred in 2007. So without even taking into consideration the other factors, that alone I think is sufficient to force the court to say that he does not qualify. [¶] Insofar as the arguments of uncorroborated comments by the People's witness[,] Mr. Enriquez, the unequivocal evidence comes from Mr. Reyes' mouth alone that he is involved in some manner or way with the Mexican Mafia. I don't think I need to extrapolate . . . whether he is a runner or a made member, that really becomes irrelevant. The fact is that he is involved in criminal activity on an ongoing basis whether it's as a freelancer or a member of Mexican Mafia. He has not changed his lifestyle and he is not the victim of drug abuse. So the motion to strike the strikes is denied."

B. *The trial court did not abuse its discretion.*

Reyes contends that the trial court abused its discretion by considering the 2007 uncharged residential burglary and Enriquez's testimony.

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (Pen. Code, § 1385, subd. (a); *Romero, supra*, 13 Cal.4th at p. 504.) We review a trial court's refusal to strike a prior conviction allegation under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374-375.) Under that standard, the party seeking reversal must " 'clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Carmony*, at p. 378.) Only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*Ibid.*) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*Ibid.*)

6

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.) We presume the trial court considered all of the relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, the trial court cited the 2007 uncharged residential burglary as a factor in its refusal to strike a prior. Reyes argues that the court could not consider that burglary because it was insufficiently proven and violated the corpus delicti rule. "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169.) The prosecution cannot satisfy this burden by relying exclusively on the extrajudicial statements, confessions, or admissions of the defendant. (*Ibid.*) The rule is designed to protect a person from being falsely convicted, by his or her untested words alone, of a crime that never happened. (*People v. Davis* (2008) 168 Cal.App.4th 617, 634.) The corpus delicti rule is not applicable to uncharged act evidence, but it does apply to unadjudicated offenses proffered as aggravating evidence at the penalty phase of a capital trial. (*Id*. at p. 638; *People v. Fuiava* (2012) 53 Cal.4th 622, 642.)

Reyes contends that the corpus delicti rule applies at a hearing on a motion to strike a prior under *Romero*, because the *Romero* hearing is analogous to the penalty phase of a capital trial. It is not. At the penalty phase of a capital trial, the issue is what

7

will be the penalty. At a *Romero* hearing, the penalty has been set under the Three Strikes law, and the issue is whether the court will mitigate that penalty by striking a prior.

In any event, even if the corpus delicti rule applied to the hearing on Reyes's *Romero* motion, it was satisfied. Reyes's admission, captured in one of the wiretaps, that he committed the residential burglary was independently corroborated. Detective Sloan testified that the Los Alamitos Police Department investigated the burglary. The victim saw Reyes take items out of the victim's home. The victim took down the license plate number of the car the burglar got into. The car was registered to Reyes's girlfriend, and it was the car Reyes drove and that Detective Sloan was surveilling as a part of the federal investigation.

Reyes next contends that Penal Code section 1111.5 precluded the trial court from considering Enriquez's testimony. That section provides that a defendant may not be convicted, a special circumstance found true, or a fact be used in aggravation based on the uncorroborated testimony of an in-custody informant. (§ 1111.5.)[5] The section, however, became effective January 1, 2012, after Reyes's crimes and trial, and the general rule is that no part of the Penal Code is retroactive unless expressly so declared. (Pen. Code, § 3; *People v. Brown* (2012) 54 Cal.4th 314, 319.) Moreover, the section is inapplicable at a hearing on a *Romero* motion because the evidence is not used to convict the defendant, to find true a special circumstance or to aggravate the sentence. Such evidence would be used, as here, not to mitigate a Three Strikes sentence.

---

[5] The section also provides: "The testimony of an in-custody informant shall be corroborated by other evidence that connects the defendant with the commission of the offense, the special circumstance, or the evidence offered in aggravation to which the in-custody informant testifies. Corroboration is not sufficient if it merely shows the commission of the offense or the special circumstance or the circumstance in aggravation. Corroboration of an in-custody informant shall not be provided by the testimony of another in-custody informant unless the party calling the in-custody informant as a witness establishes by a preponderance of the evidence that the in-custody informant has not communicated with another in-custody informant on the subject of the testimony." (Pen. Code, § 1111.5, subd. (a).)

Reyes's final reason why his Three Strikes sentence was an abuse of discretion is the trial court failed to consider several important factors, namely, the minor nature of the commitment offense (heroin possession) and Reyes's cooperative confession of guilt. It is clear, however, that the court did consider these factors, because the court said it had been initially inclined to strike one of Reyes's convictions. But, after hearing the People's evidence, the court concluded, under *Williams*, that Reyes fell "outside the spirit of the Three Strikes law." Under *Williams,* a court may consider the particulars of a defendant's background, character, and prospects. The People's evidence that Reyes is involved with the Mexican Mafia certainly was relevant to those factors.

We therefore conclude that the trial court did not abuse its discretion by denying Reyes's *Romero* motion.

C.      *The impact of the passage of Proposition 36.*

After oral argument on this matter, we granted Reyes's request to vacate submission and to file supplemental briefing on the impact of the passage of Proposition 36 on his Three Strikes sentence.

On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (hereafter the Act), which amended Penal Code sections 667 and 1170.12 and added section 1170.126 to the Penal Code. The Act's effective date was November 7, 2012. Before the Act's passage, the Three Strikes law provided that a recidivist with two or more prior strikes who is convicted of a new felony was subject to an indeterminate life sentence. (*People v. Yearwood* (2013) 213 Cal.App.4th 161.) The Act now reserves "the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.[6] In all other cases, the recidivist will be sentenced as a second strike offender."

---

[6]      The prosecutor may plead and prove, for example, that the current offense is a controlled substance charge in which an allegation under Health and Safety Code section 11370.4 or 11379.8 was admitted or found true; the current offense is a felony sex offense under Penal Code section 261.5 or 262 or is a felony resulting in mandatory registration as a sex offender, with specified exceptions; the defendant used a firearm or deadly weapon or intended to cause great bodily injury during the commission of the

9

(*Yearwood*, at pp. 167-168; see also, Pen. Code, §§ 667, subd. (e)(2)(C) [a defendant with two prior strikes whose current conviction is not for a serious or violent felony shall be sentenced as a second striker], 1170.12, subd. (c)(2)(C) [same].)

The Act also created a procedure for "persons presently serving an indeterminate term of imprisonment" under the former Three Strikes law "whose sentence under this [A]ct would not have been an indeterminate life sentence." (Pen. Code, § 1170.126, subd. (a).) Such a person may file, before the court that entered the judgment of conviction, a "petition for a recall of sentence" within two years of the date of the Act or at a later date on a showing of good cause. (§ 1170.126, subd. (b).) A petitioner is eligible for resentencing if (1) he or she is serving an indeterminate term of life imprisonment for a conviction of felony or felonies that are not serious and/or violent (Pen. Code, §§ 667.5, 1192.7, subd. (c)); (2) his or her current sentence was not imposed for disqualifying offenses specified in Penal Code sections 667 subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C); and (3) he or she has no prior convictions for offenses listed in sections 667, subdivision (e)(2)(C)(iv) and 1170.12, subdivision (c)(2)(C)(iv). (§ 1170.126, subd. (e).)

If a trial court determines that the petitioner satisfies this criteria, then he or she shall be resentenced as a second striker, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f).) In exercising its discretion, the trial court may consider the petitioner's criminal conviction history, disciplinary record and record of rehabilitation while incarcerated, and any other evidence the court, in its discretion, determines to be relevant. (§ 1170.126, subd. (g).)

Reyes contends that he should be resentenced as a second striker, under the new provisions of Penal Code sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C), rather than have to petition for a recall of his sentence under the newly enacted Penal Code section 1170.126. He bases his request to be resentenced on *In re Estrada*

current offense; and the defendant suffered a prior conviction for specified serious and/or violent felonies. (Pen. Code, § 1170.12, subd. (c)(2)(C)(i)-(iv).)

10

(1965) 63 Cal.2d 740, 744, 746, which held that, absent indication of a contrary intent, the Legislature is presumed to intend retroactive application of legislation lessening punishment. The Act, however, is not silent on retroactivity. Rather, section 1170.126 "operates as the functional equivalent of a saving clause." (*People v. Yearwood, supra,* 213 Cal.App.4th at pp. 168, 172.) "Section 1170.126 is not ambiguous. The voters intended a petition for recall to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former [T]hree [S]trikes law on the Act's effective dates without regard to the finality of the judgment." (*Yearwood*, at p. 172.)

By virtue of Penal Code section 1170.126, the Act applies in a limited manner to prisoners serving Three Strikes sentences when the Act was enacted, and establishes a specific procedure for a defendant to follow, namely, file a petition for recall in the trial court. Reyes's remedy therefore is not in this court. His remedy, if any, is in the trial court, where he must follow the procedure in section 1170.126.

## II. Cruel and/or unusual punishment.

Reyes contends that his Three Strikes sentence of 25 years to life is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and cruel or unusual punishment under our state Constitution (Cal. Const., art. I, § 17). He did not raise this objection below. It is forfeited.[7] (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.)

Even if not waived, we would reject the contentions. Whether a punishment is cruel and unusual is a question of law, but we review the underlying facts in the light most favorable to the judgment. (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358.) A punishment for a term of years violates the Eighth Amendment to the United States Constitution if it is an " 'extreme sentence[]' " that is " ' "grossly disproportionate" to the crime.' [Citation.]" (*Ewing v. California* (2003) 538 U.S. 11, 23 (plur. opn. of

---

[7] Because we conclude that Reyes's sentence was not cruel and unusual punishment, his ineffective assistance of counsel claim, based on his trial counsel's failure to object, fails.

O'Connor, J.); *Lockyer v. Andrade* (2003) 538 U.S. 63, 72.)  The Eighth Amendment contains a " 'narrow proportionality principle' " applicable to noncapital sentences (*Ewing*, at p. 20), but does not require strict proportionality between crime and sentence (*id.* at p. 23).  Thus, in a noncapital case, " 'successful challenges to the proportionality of particular sentences have been exceedingly rare.' [Citation.]" (*Id.* at p. 21; see also *Lockyer*, at p. 73; *People v. Haller* (2009) 174 Cal.App.4th 1080, 1087-1088.)

A punishment violates the state Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.)  The defendant must demonstrate the punishment is disproportionate in light of (1) the offense and defendant's background, (2) more serious offenses, or (3) similar offenses in other jurisdictions. (*Id.* at pp. 429-437.)  Because the defendant must overcome a "considerable burden" to show the sentence is disproportionate to the level of culpability (*People v. Wingo* (1975) 14 Cal.3d 169, 174), "[f]indings of disproportionality have occurred with exquisite rarity in the case law" (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196).

The United States Supreme Court has repeatedly found, under circumstances analogous to these, that third strike sentences are not cruel and unusual punishment under the federal Constitution. (See, e.g., *Lockyer v. Andrade, supra,* 538 U.S. 63 [third strike sentence for two counts of petty theft with a prior for stealing, on separate occasions, merchandise valued at $84.70 and $68.84]; *Ewing v. California, supra,* 538 U.S. 11 [third strike sentence for shoplifting golf clubs worth $1,200]; see *Harmelin v. Michigan* (1991) 501 U.S. 957 [life without parole sentence for possession of cocaine was not cruel and unusual].)

That "California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)  California is not required "to march in lockstep with other states in fashioning a penal code.  It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.'

12

[Citation.]  Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct."  (*Ibid.*)  Recidivism therefore continues to be a legitimate sentencing consideration.  (See *People v. Romero* (2002) 99 Cal.App.4th 1418, 1432 [third strike sentence for felony petty theft of a magazine not cruel or unusual punishment]; *Martinez*, at p. 1516.)

Reyes, however, analogizes his case to, among others, *People v. Carmony* (2005) 127 Cal.App.4th 1066.  In *Carmony*, the defendant, a sex offender, registered his correct address with police one month before his birthday, as required by law, but he failed to update his registration with the same information within five working days of his birthday.  (*Id.* at p. 1071.)  He later pleaded guilty to failing to register as a sex offender and admitted three prior serious or violent felony convictions.  (*Ibid.*)  The Court of Appeal deemed the Three Strikes sentence unconstitutional, in part because Carmony's current offense was "no more than a harmless technical violation of a regulatory law."  (*Id.* at pp. 1072, 1077; cf. *People v. Poslof* (2005) 126 Cal.App.4th 92 [three-strike life term for failing to register as sex offender not unconstitutional].)

But Reyes did not simply neglect to comply with a regulatory requirement.  He possessed heroin.  His crime may not have been "serious" or "violent," but his conduct certainly presented a danger to the public.  In fact, Reyes admitted in his *Romero* motion that he committed his prior burglary felonies to support his addiction.  We therefore do not agree that Reyes's Three Strikes sentence, although harsh, constitutes cruel and unusual punishment.

**III.    Witnesses.**

Reyes next contends that the trial court's refusal to compel the attendance of two in-custody witnesses violated his right to present a defense, under the Sixth and Fourteenth Amendments of the United States Constitution.  We disagree.

The federal due process clause does not extend the same evidentiary protections at sentencing proceedings as exist at the trial, and any purported right of confrontation does not derive from the Sixth and Fourteenth Amendments.  (*People v. Arbuckle* (1978) 22

13

Cal.3d 749, 754.)  Rather, a defendant is entitled only to a sentencing hearing that is fundamentally fair.  (*Ibid.*)

Reyes's sentencing hearing was not rendered fundamentally unfair by the trial court's refusal to compel Baca's and Gabriel Reyes's attendance as witnesses.  At the hearing on Reyes's *Romero* motion, after Enriquez testified, defense counsel asked to have Baca and Reyes "pulled down" from Pelican Bay prison.  The trial court said that per court policy it would not bring prisoners from state prison without an express declaration under seal showing why they were pertinent or necessary.  The court noted that during an unreported ex parte hearing it had denied the request without prejudice after hearing the defense offer of proof.

Defense counsel explained:  "In essence, Mr. Enriquez spoke about orders that Mr. Reyes was allegedly receiving and following after Mr. Enriquez had defected from the Mexican Mafia.  It's our contention that if we were to have Mr. Baca or Mr. Reyes, . . . that they would be able to indicate that since 2002 or since Mr. Enriquez's defection from the 'EME' that there's been no contact between, at least with Mr. Baca, between him and Raymond Reyes.

"The court:  You mean Mr. Enriquez?

"[Defense counsel]:  No.  Between Mr. Baca and Raymond Reyes.

"The court:  There's been no evidence offered that there has been.

"[Defense counsel]:  No, but Mr. Enriquez spoke about the fact, he surmised or kind of speculated, that Mr. Reyes was following orders.  Because all the clips that he talked about yesterday were post his defection from the Mexican Mafia.

"The court:  That's correct.

"[Defense counsel]:  So the idea would be is that Mr. Baca would be in a position to say that he was—he being a remaining Mexican Mafia head – was not ordering Mr. Reyes to do anything, nor was he receiving any contact from Mr. Reyes in furtherance of Mafia activities, which would be contrary to the testimony of Mr. Enriquez.

14

"The court:  Mr. Enriquez didn't really testify to that.  He just testified to what the phone calls were, and what they meant in terms of some of the lingo or argot that was being used.  He didn't attribute orders to anybody.  He just said that's the way the system works.  He even said, he even testified that the crew chief is an independent operator and can make these decisions without any orders.  I don't think any of the proffered testimony is relevant or would rebut any of the inferences argued by the People.  Mr. Enriquez was quite clear that he had no contact with any of the Mexican Mafia since his walk away and so there's nothing to rebut there.  So the request is denied."

The request was properly denied.  Baca's and Gabriel Reyes's proposed testimony was irrelevant, based on the defense offer of proof.  (See generally, Evid. Code, § 210 [only relevant evidence is admissible]; *People v. Cornwell* (2005) 37 Cal.4th 50, 82 [a state court's application of ordinary rules of evidence generally does not infringe upon a defendant's right to present a defense], disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  The defense argued that Baca's and Gabriel Reyes's testimony was relevant to show that there had been no contact between Reyes and Baca, which would tend to show that Reyes was not involved with the Mexican Mafia.  Enriquez, however, did not say there was such contact.  Enriquez testified that he and Baca recruited Reyes in 2000 or 2001 and gave him orders.  After 2002, Enriquez defected from the Mexican Mafia and had no contact with Reyes.  Although Enriquez listened to the 2007-2008 audio clips of Reyes speaking to other gang members, Enriquez merely interpreted them.  He did not say that Baca was continuing to give Reyes orders in 2007-2008.  The trial court therefore properly denied the request to have Baca and Gabriel Reyes brought from state prison to rebut nonexistent testimony.

15

## DISPOSITION

The clerk of the superior court is directed to correct the abstract of judgment to note that defendant and appellant was sentenced under the Three Strikes law and to forward the corrected abstract to the Department of Corrections.  The judgment is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.


CROSKEY, J.

16